The Honorable, the Judges of the United States Court of Appeals for the 4th Organ. Be seated. Our next case is United States v. Ashford. Mr. Brown. Good to see you, Mr. Brown. Good to see you, Your Honor. Yes, sir. Good to be here. May it please the Court, even the most persuasive counsel may not be able to speak for the defendant, as the defendant might, with halting eloquence, speak for himself. That's a statement that came out of the Green case that kind of generated the progeny regarding allocution rights. And I think that's what we've got here. And there's two components to my argument. There's error, and we've established prejudice. I'm going to start with the error part. Can I, just as a framing? Yes, sir. We'll probably go on the same. Are you conceding that harmless error review, assuming there was a preserved allocution error? Are you conceding that there's still harmless error review of that? Yes, I am. Okay. This is not structural. Okay. Yes, sir. And I think I did put that in there. Yeah, but I just want to make absolutely clear. Yes, sir. Absolutely. And I do believe, though, it is constitutional under this circuit. I will concede it's not the traditional where there was an objection made and there was no allocution at all. But in this case, dealing with Rule 32, which the current version came up after Green, but dealing with Rule 32, it says before sentencing, it shall be heard. And in this case, he was heard, but it was not before sentencing. And so it's our argument here that this is a constitutional error, more like ash than one of these. I thought the allocution requirement was in Rule 32. Yes, sir. And you think it's constitutional? I do. Hill says. Why would you go to the Constitution if you got a rule that requires it? Well, because Ash says when a defendant objects to not allocuting before sentencing, that it's constitutional. And that was an opinion from this court. Well, that's why they can't rewrite the Constitution. The Constitution doesn't contain that language. I mean, it's in Rule 32. It does not judge, but Ash says it's due process, which makes it constitutional. But you don't reach constitutional issues if you can decide them on non-constitutional issues. And on that note, I believe. You ever heard of Ice Wanderer? I'm sorry. You ever heard of Ice Wanderer? No, sir. That's a Supreme Court decision. Yes, sir. Back in the 30s, I think, that establishes the constitutional avoidance doctrine. Yes, sir. We don't decide constitutional questions if we can decide them on a non-constitutional basis. And I think that we could do it that way. I think the main difference on whether it's constitutional deals with what type of harmless error review we have here. Regardless, the government, because it was objected to, the government would then have to prove it was harmless either under the code of ethics. What's wrong with what happened here? Lewis tried to fix it. In this case? Yes. The judge actually did say, I'll be happy to consider anything you want to tell me. She permitted him to allocate. That's correct. But then she had not reopened. Pardon? She had not reopened the sentencing procedure. Sir, in order for you to prevail, do we need to adopt the test, something like the Seventh Circuit, I think, has adopted? Yes, sir. There needs to be a cure process. Tell us why we need to do that. Well, there needs to be a cure process. Because the defendant has to, and this is, again, we're drawing from other cases, but there has to be a meaningful opportunity to give the allocation. And the judge should, the court should communicate to the defendant that what he says might affect the sentence. And she says, I'll consider it. And that's an ambiguous statement. Like, I'll consider it, but I've already decided. Were you his lawyer at the sentencing? I was not. But I thought I was going to get a fine. You're just like, I should have looked at the record. I'm looking at the record only. That's correct. I mean, his lawyer should have, his lawyer or the government lawyer should have piped up and said something to the judge and helped the judge hear. That's interesting. Why didn't they do that? Well, they didn't say it before the sentence was imposed, and I cannot tell you why, but the government concedes that it's a preserved objection, even though it did occur after the sentencing was actually done. Well, let me take you to something of a threshold question that we haven't gotten to yet, and that's the government says there's an appeal waiver in this case. Yes, sir. And that that applies, so we don't need to get any of this. What's your view of that? Well, I believe that they waived the waiver. And it's interesting, Judge Agee, because you're actually a judge that was on two of the unpublished opinions that have come up in the briefs. They cite the Gould case, and the Myers case is the one I think that is more appropriate, and I can kind of go through the difference in the two of them. Let me cut to the, I think it's the bottom line here. So you've got a confusing number of briefings here. So you have an, if I'm remembering the chronology correctly, you have an Anders brief. Yes, sir. Which raises ineffective assistance. That's correct. Right? So there was nothing for the government to say with respect to that brief as to the appeal waiver because it doesn't cover ineffective assistance, right? Well, that's correct, Judge. But then there was another brief, a Pro Se brief, which did raise substantive issues. I don't know if that makes any difference with the merits of the law, but it did not raise ineffective assistance. So it seems like to me that that's, if you were to prevail on the waiver issue, it has to be on the basis of the second brief. That is what I assert, because he raises a substantive claim in his Pro Se brief, and it's actually the objection that his counsel argued as well, and it's actually one that I tried to touch on in my IEC claim. But I do believe that that falls squarely within the waiver. So he also, though, in his Pro Se brief, does raise an allegation about whether his counsel was effective. That is also in his Pro Se brief, right? And, Judge, I did put that down here, and it's interesting because I said his counsel was ineffective, and he turns around and wants to get it out of IEC, and I thought it was neat, and an inmate filed Pro Se brief says that his lawyer was effective and that he appropriately did. So he actually couches it in the opposite way. But he states the issue of whether his client was effective, which is just the opposite way of asking whether his client, his lawyer, was ineffective, right? He says that in the one line. I know. Yes, sir, and the rest of it's on the merits. Can I ask you, so I guess there's a timing question and then there's a legal question. So I agree. The government did not, in fact, respond to the Pro Se brief, which seems to have raised things that were covered by the appeal waiver. So just on a timing question, because I was a little confused by this, but I think I figured it out and I want to give you a chance to tell me that I'm wrong. Am I right that by the time he filed that Pro Se brief, under this court's briefing order, the time for the government to file a response brief had already expired? Under the briefing order, but interestingly. When he filed his Pro Se brief, this court did not generate another briefing order to say, dear government, if you'd like to respond to the Pro Se brief, your deadline for doing so is X. We don't, I mean, I guess then I'll take a step. Conceptually speaking, my understanding is that the way this court operates is the government is entitled and probably expected to ignore Pro Se briefs unless and until this court directs it to file a response. I don't believe that would be the case if I was on the government side and there was something I thought that was. No, but I'm saying we don't tell them to do it. You don't tell them to do it and there's no rule, and I cannot find any local rule for any circuit that addresses that. I've tried the. And this isn't even just a Pro Se brief. This is a Pro Se brief of someone who has a lawyer whose lawyer has filed an Anders brief, right? That's correct. I mean, so in your view, did the government was supposed to like file a motion to file a brief that this court had not authorized the government to file? Well, I think his brief invites a response. Lots of things invite a response. I mean, like if I want to reply to your reply brief, I don't get to do that, for example. When would they then assert waiver? Because under your theory, you would be taking away the effect of what he said. Well, this is, I think, from a practical standpoint, a pretty important question to resolve because we have lots of cases where we have lots of Pro Se briefs. Yes, sir. And the question is whether or not the rule says whether or not there is a briefing order from the court. When there's a Pro Se brief filed, is the government then at risk if they don't file within the period set by the rules otherwise? And if I may suggest that the Gould opinion they cite, and it's not in the opinion but it's in the record, in Gould there was an Anders brief filed and then there was a subsequent brief that was filed Pro Se. But the response the government filed in between reserved the right to assert waiver, which they then subsequently did. And in this case, more like Myers, there was a government notice, there will be no responsive brief, no reservation in Myers, no reservation in this case. But would you agree, like I agree there are unpublished opinions going both ways on this question, but first they're unpublished. Second of all, I don't think that any, at least unless you're wrong, like it's not just that they're unpublished. None of them to me really explain why they're doing what they're doing one way or the other. Some of them just say like we're not going to enforce the waiver. Some of them say we are going to enforce the waiver. It seems to be the only decision that we've issued that sort of kind of bears down and stuff like this is Kemp. Now Kemp is different for a variety of reasons. But like, and I don't think Kemp resolves this issue. Kemp does not deal with this specific issue. But like so it doesn't strike me as particularly helpful to parse what the previous cases that haven't given a lot of reasoning have said. It strikes me like why should the rule be X or why should the rule be Y? Well Judge, I would suggest that at some point in time, the rule or the waiver has to be asserted in a timely fashion or you get six months down the line. Well let me, I don't want to interrupt so much, but this is going to come up a lot. Somebody's got to write this opinion and in theory we ought to at least instruct both sides what the rule is going forward if we can come up with one. Yes. And it seems like to me some part of your answer is okay, whenever there's a brief filed in a case, Anders, Proce, whatever, the government needs to just send in a rote letter that says we're not filing a brief at this point but we're reserving our right to assert an appeal waiver, period, virtual years. That's exactly right. That's exactly right. Then there's a follow up question of whether or not. I thought you were saying that should be the rule. I think that should be the rule. How do I square that with the fact that this court has squarely held that the government has no obligation to file anything at all in response to an Anders brief? Well they don't have an obligation to assert a waiver. They can assert a waiver or they can waive it. It's just a little weird to say that you don't have to respond unless directed to but if you don't respond, you've waived a bunch of rights by not responding. That is a different, like to me saying you don't have to respond means you don't have to respond and nothing bad will happen to you if you don't respond. It seems a little weird to say you don't have to respond but by the way, if you don't respond, you've waived the following rights. And a lot of it is just a waiver of appellate rights is significant. But we have an obligation to review the Anders brief. That's correct. And review the case and see whether there's anything to it. Whether the government responds or not. And if they don't respond, they've waived a bunch of arguments to answer your question. That's sort of based on the view, at least in part, but if the government had asserted the appeal waiver, that would save the court and a lot of other people a lot of time instead of slogging through all the steps we have to go through with an Anders brief. That's correct as well. I think the Anders review would still have to be there. And I say that because there may be something that falls outside of the waiver. There may be something that you also get past in the appeal waiver in the interest of justice or something, can't we? Is there some catch-all that we can disregard the appeal waiver if we want to? That's not something I briefed, and I apologize. Maybe there's something there that you don't know about. There may be another reason, and I apologize if I should. I've got a case. I've got one in mind, but I can't remember what it was. I do think that there are times where it shouldn't be enforced, but I think generally, like in this case, I think it's a valid waiver. It was just waived. But I do think that what we've done is— Okay, so let me ask you this. I know this isn't the—at least it's not your view of the facts, but assume— I want to go with Judge Agee's follow-up. Okay, so the government, he files an—sorry, his lawyer. His lawyer files an Anders brief. That lawyer raises literally no claims that are covered by the appeal waiver because they're just straight-up IAC claims. Do you think the government waived the appeal waiver by not responding to the Anders brief? No, I do not. Okay, so then for the next question, this is the part where we're going to vary the facts. Yes, sir. If his pro se brief had also raised only claims covered by the appeal waiver, do you think the government would have waived the appeal waiver by not responding to that brief? That's pretty much what we have here. No, only claims that are covered. Sorry, that are not covered. Not covered. Oh, well, that's Google. Right. Again, I'm not asking about the facts of unpublished opinions. No, no, no. Well, I believe that in that situation, the first response would be then when there is a merit issue waived. To answer your question. So it's the first—so the test you would have us apply is the first time that the defendant, either through an Anders brief, a counsel brief, or a pro se brief, the first time he raises a claim that is covered by the appeal waiver. Yes, sir. It is incumbent. Yes, sir. Absolutely. And I do think—and that's why I put it under one of my bad facts. And I'm down to the last few seconds. One of my bad facts is that he used that phrase, my counsel was effective and— I'm going to get the language right. My counsel was effective and absolutely correct. And I do—I put that in there because it sounds like he's raising IAC, but I think in effect what he is saying is my appeal lawyer, me, doesn't need to say my trial counsel was ineffective. I want to address this substantive issue. How did we get to the allocution issue here? It was not sure. Well, you would find that they waived the waiver. And then the ambiguity about— The government waived the waiver by what? By not asserting after the—by not reserving it after my brief and not asserting it after his merit claim was waived. If you get to the merits of the allocution— Yes, sir. Then what we've got is he wasn't—before sentencing he did not allocute. Sentencing was not— Why do we have to recognize the—what you say the alloc— Is it going to be harmless error? It's not. It's non-cumulative and it is relevant. And he says— Can it be harmless error? It can be. It can be. And I believe it's constitutional because the objective— The line with harmless error here is he did allocute. Yes, sir. And here's why it's not harmful. And the judge said I've completed the sentence. But it didn't impact the sentence. Well, she said— Why didn't we read into that that she's satisfied with the sentence after hearing him allocate? Well, she says I believe I've already imposed the sentence. I believe I've announced my sentence, which to me is actually error law, which y'all can review de novo because she didn't— So what do you want us to do? To send it back for a new sentence? You want us to vacate, send it back for resentencing. That's correct. And give him a straight-up shot at allocution. That's correct. He tries to—he offers mitigating evidence. He tries to lessen his culpability, although it's not a defense, to the gun possession liability that he has. All right. Let's see what the government says. Yes, sir. Thank you so much. Ms. Flynn, good to have you with us. Thank you, Your Honors. May it please the Court, my name is Katherine Flynn, and I represent Appellee United States in this matter. Two things are true in this appeal. First, the government timely raised the appellate waiver in Mr. Ashford's plea agreement. And second, when made aware of its procedural error in not providing that initial opportunity to allocute to Mr. Ashford at his sentencing hearing, the district court cured that error, or if that error was not cured, it was harmless in light of the allocution that Mr. Ashford then provided. Because these two things are true, this court should dismiss the appeal or if it reaches the merits of this appeal, it should affirm the district court. How did you interpose the appellate waiver? How did we interpose? When did we raise it? How did you do it? When and where? Your Honor, to add some more facts... Well, isn't the answer in response to this court's briefing order, that's when you did it? Isn't that just the answer? That's the answer, Your Honor. So, Your Honor... How long after that? What period of time had passed between the appellant's pro sabre and the time the government filed the assertion of the waiver? Your Honor, I don't have the exact month of the... Well, some degree of time had passed... It was out of time, right? Yeah, out of time. Well, no, it was not out of time, Your Honor. Well, that's what I think we're trying to get at. Yes, Your Honor. How was it timely? When was it? Why don't you just tell us when you asserted the waiver? Yes, Your Honor. So, Your Honor, under this court's local rule 27F and the scheduling order in this case... When did you assert the waiver? We asserted it in our supplemental response brief. When was that? Your Honor, I don't have the exact... Well, and when did they... When was his pro sabre filed? His pro sabre was filed in January of 2023. What's the date? I haven't... The end of January of 2023. Does January 30th sound right to you? That does sound right to me. January 30th, 2023. And you don't know when they asserted the waiver? We asserted it in our supplemental response brief in response to the... Do you know what month that was? I can look it up. I'm just trying to get some idea of time in this case. Certainly, Your Honor. I'd be happy to speak to the various steps in time. I think she's handed you something there. Tell us when that waiver... Our supplemental response brief was filed November the 6th of 2023. November the 5th? November the 6th of 2023. So, it was some period of time after Mr. Ashford's pro se... Ten months. Anders brief. Nine months. Correct. But at the time that Mr. Ashford filed his pro se Anders brief, there was no response brief then due from the government. The initial... That's sort of the issue. I agree, Your Honor. That is the issue. The local rule 27F and the scheduling order in this case require the government to file a motion to dismiss within the time to file a response brief. The initial attorney Anders brief creates an ineffective assistance to counsel claim which falls outside the scope of the waiver as just argued by Mr. Brown as conceded on page 10 of his supplemental... I don't think anybody questions that that's... That did not cause the assertion of the waiver to be made at that time. And Your Honor, the government's Anders response was due December the 19th of 2022. The government filed its notice of no response December the 15th of 2022. Approximately one month later, Mr. Ashford filed a pro se Anders brief, but at that point there was no response brief due from the government. There wasn't one allowed under the scheduling order. The DOJ practices nationwide or in your district, when you filed that initial, we're not going to file a response. In other districts, do they say comma, but we're reserving our right to assert an appeal waiver if one applies? I have seen that filed by other districts. I don't know how widespread that practice is. The opposing counsel seemed to concede that that would solve the waiver question. And had we... At the point at which our response brief was due, we had no idea that there would be an issue within the scope of the waiver. When this court did its Anders review and issued a supplemental briefing order and a supplemental briefing scheduling order, it then created a new response date for the government. And so then we go back to rule 27. Were you at the sentencing proceeding? I was, Your Honor. Why didn't you tell the judge you needed to allocute properly? Well, Your Honor, actually his defense attorney responded to the judge when she... I'm asking the government, why didn't they bring to the attention of the court that the allocution is out of whack time-wise. He's entitled to allocute before he's sentenced, not after he's sentenced. Well, and Your Honor, our position would be... That's upside down. We got it wrong, Judge. Both lawyers, it seems to me, have obligations to try to keep these things straight. The defense lawyer can say he didn't do it, but he could argue, well, I don't... Let them mess it up if they're going to. I'm helping my client. But the government has an obligation, for sure, to the system and to the court to get it right. Absolutely, Your Honor. But nobody did here. And Judge Lewis got it out of whack. It's upside down. The allocution came after the sentence. And under the rule 30.32, he had a right to allocate before he was sentenced. That's wrong. That's an error. So the question is, what do we do with it? Why doesn't the government just say, let's do it over, get it right? Well, Your Honor... We had a case here. I was on one. I remember Judge Wilkins wrote in Mahama years ago, back probably 2002 or something. And we recognized that it was a failure to give the defendant the right to allocate. And we recognized it as plain error. It would satisfy the plain error requirement. And so I think the distinction between Mahama... It's not difficult. When you go to the sentencing, you need to know what most happened at the sentencing. That's right there in the rule. Rule 32. So, Your Honor, I think the difference between Mahama and between this case is that the error was actually raised to the court at the district court at sentencing. So it was a preserved error. I thought the court had already pronounced a sentence at that time. The court had pronounced a sentence, and then the defense attorney at the time, the plea counsel, made it known to the court that there had been a procedural error. It was brought to the attention of the court, but she didn't fix it. He has a right to allocate before he sins. So you needed to back up and start all over again at that point to get it right. And that if we remanded, that's what we would have to say, is the allocution is before sins. Here you sentenced him, then gave him a right of allocution, and then said the sentence has been imposed. And then that was the end of the proceedings. Well, Your Honor. So you got an erroneous sentence under Rule 32. The question is whether we recognize it. And, Your Honor. And the government doesn't want us to. And then the question is whether you interposed his appeal waiver. I have also, I can't name the case, but I know there's a case where we have some general authority in some special circumstances to say we're not going to apply the appeal waiver. Whatever it is. Certainly, Your Honor. Just get things fixed. Make sure the system works. So, Your Honor, as to the special circumstances in which the appeal waiver is not applied, and there's a series of cases out of the Fourth Circuit, the appeal waiver, this court has found not to apply where a fundamental constitutional right has been breached. And, Your Honor, with respect to Mr. Brown, I would submit that this is not that level of a constitutional error. Indeed, the Hill case out of the Supreme Court, which comes out of... Well, it's a rule error. Right. Well, we know it's a rule error. And you have to... I would think that the government has to recognize that there was an error committed in the sentencing. And the question is what the government's going to do about it.  I mean, you can concede the error and join with them and get an order to get the thing resentenced and get it fixed. But then we... Whatever we need to write, we don't have to write and make some tough law. Well, Your Honor, we would submit... In fact, we did submit in our briefs that there was a procedural error in sentencing here. Having said that, we take the position that this error was cured. To begin with, this is not a complete denial of the right to allocution. I think you've already said this. Can I just make sure that the government is also not asserting that this error was forfeited? It strikes me that the government might have had an argument that this was forfeited, but there was no... You have not argued that Rule 52B applies here, right? That's correct. Okay, thank you. So this is not... Are you saying it's harmless error? We are saying it's harmless error. We're saying, initially, it's a two-part argument that Judge Lewis cured the error by following the procedure, and I'll kind of walk through this, that both the Second and the Seventh Circuits have recognized and cured this procedural error. But in the alternative, in light of the allocution Mr. Ashford then gave, this was harmless error. In the Seventh Circuit, as I read this Lukey case, I don't think that that is going to help you very much because they say that in order to rectify the error, the trial judge needs to set aside the sentence, which I don't think happened here. They have to reopen the proceeding, which is debatable, to invite the defendant to speak, which they did, but then the trial judge has to show that they genuinely reconsidered the sentence in light of the defendant's later allocution. And I think what I remember in this case was that the court said, thank you very much, I've already announced my sentence. So it looks like, to me, if we adopt that sort of a test, the case has got to go back. Well, Your Honor, Lukey case also tells us, and I think you've laid out the correct steps, reopen, invite the defendant to allocute, reconsider this appropriate sentence in light of what the defendant has to say. Is that what you want us to do? Well, Your Honor, I think that's what Judge Lewis did here. What do I do? I have a quote directly. I mean, maybe, I think it'd be a tough sled for you to begin with, but then I just get this absolutely devastating statement by the district court in response to the defendant talks, and then what the district court said is, I mean, the best thing would be, great, I've thought about it really carefully, and I still believe blah. But what the district court judge says instead, she doesn't even announce the term of imprisonment again. She says, quote, I believe I have announced my sentence. As in, like, that to me is, I haven't reopened it. Like, I read that as saying, there's no reason for me to say anything because I've already told you what you get, which is sort of the opposite of reopening the issue. Respectfully, I would respond with this. Look, he tells us that no specific word are required. 100% agree. It's not a Miranda warner. But what you can't say is, cool, thanks for whatever you just said. I've already told you what the answer is. I'm done. And that's the point that I say both lawyers had an obligation to help Judge Lewis out. To say, whoa, whoa, whoa, you can't do that. Yeah, that's right. I think that's, I would expect that from officers of the court. That that would happen. But that didn't happen here. We don't have to deal with that. We deal with the facts we're presented with. And the question is whether we're going to send it back or re-sentence it. Or allocution it. And so, Your Honor, Mr. Brown in his supplemental reply brief indeed concedes that the Seventh and Second Circuits apparent remedy to this procedural error would be the appropriate procedure for remedy. As I said, look, he tells us that it's the substance of what matters, not the magic words. And that we're to credit what the district judge says about his or her willingness to reconsider the sentence. Where does the district court say she's willing to reconsider? I remember her saying, I'm willing to listen to anything you say. But I don't remember her saying, I'm actually going to reconsider your sentence. At Appendix 107 to 108, she actually says when this procedural error is brought to her attention, she says, I would be happy to take into consideration anything you have to say, Mr. Ashford, concerning your sentence. But she doesn't say, my bad. I shouldn't have just sentenced you without hearing from you. We're going to start over. I mean, I guess at minimum we would agree this is not the optimal care situation, right? Could she have said some more words? Like, I'm so sorry. I made a serious mistake, sir. You have an absolute right to speak to me before I impose a sentence. I want to say, strike everything I just said. We're starting over. We're starting over. Then we'd be in a different procedure than we are. But I think under Lupke... Assume we're not going to agree with what you're trying to market here. Assume we're not going to agree with that. What do you want us to do? Well, even if the court did not hear the procedural error under the Seventh and Second Circuits remedy, and we would submit that it did, we would nonetheless submit that the error here was harmless. Assume we're going to reject your harmless interpretation. Okay. Then we would ask that this court dismiss on the appeal waiver, which was timely raised at the first point at which a response brief was due from the government under both the scheduling order and Rule 26. Can I just ask conceptually, I'm trying to figure out how you would show that an allocution error is harmless. Because I think, I guess I'm just going to go in, I'm going to take judicial notice of the fact that I suspect that district court judges generally go into sentencing with their mind already have made up, or at least a very strong initial inclination about what sentence they're going to impose, and that it doesn't happen very often that they go in with a strong initial inclination and they have a bolt from the blue. As a descriptive matter, how often would the fact that the defendant said something change the district court sentence? I rather suspect not a ton. But it also strikes me that the right to allocute isn't literally just about, it strikes me that the right to allocute is at least partly a process dignitary right that isn't so much about changing the outcome as it is, I don't know, before a person's going to tell you how long you have a chance you have to go to jail, you as an autonomous human being have a right to try to explain why you should get something different. So, how does harmlessness even work? We're confident the district court would have done the same thing no matter what the defendant said? It just seems weird. Well, I think under the facts of this case, we are confident, and here's why. This court has actually recognized in Ashe that where a defendant's allocution wouldn't parallel what his attorney had said, and in Ashe, we're dealing with a complete denial of the right to allocute. So, the defendant proffers, I would have said X, and then we ask whether if you had said X. So, this court recognized in Ashe that denial of allocution, and there it's complete denial, not belated allocution like we have here, could be harmless if the defendant's allocution would have been cumulative or irrelevant. And this court in Resendez found no plain error where a defendant decided not to late allocute because he would have mirrored what his attorney had said and did not ask the court for a lower sentence. Here, once Mr. Ashford provided the opportunity to belatedly allocute once the court is on notice of that procedural error. He provides a weak argument that parallels what his attorney has said about non-possession of guns. He starts off with, I respect your decision making and basically just want to say it disturbs my soul to see I have that enhancement, and here it's the enhancement for possession of guns in connection with drug trafficking attached to me. That issue had been extensively litigated in the sentencing. Mr. Ashford's attorney had put several facts before the court related to his non-possession of guns in connection with this case. Indeed, this was an argument that the district court had already taken into consideration in its initial pronouncement of sentence. At appendix 105, the judge says, in considering what the appropriate sentence is as to Mr. Ashford, quote, then the guns, which I understand the arguments that your lawyer has made, and you know you didn't march into every drug deal with a loaded gun. It goes on to say, nonetheless, the guidelines in Congress have seemed appropriate to recognize the danger of drugs and guns combined. So she had taken into consideration Mr. Ashford's non-possession of guns in considering the appropriate sentence. And then Mr. Ashford provides very much the same argument his attorney had just provided. You know what that red light means? I do. Go ahead and wrap it up. Your Honor, we would submit, Your Honors, we would submit that the government timely raised the appellate waiver in this case and therefore this court should dismiss the appeal. But if it reaches the merits of this appeal, it should affirm the district court either because the court followed the procedure to cure the procedural error or because that error was harmless in light of Mr. Ashford's allocation. Thank you. Thank you. Thank you. Mr. Brown? I'll be very brief. I think one thing that has to be considered about the assertion or lack of on the waiver is that your court, this panel could have heard the merits of his gun enhancement argument if the government's theory is correct. Y'all could have taken his pro sabre and then litigated the gun enhancement if they didn't have an obligation to file a response or a time at which they should have asserted the waiver. The government says even if we reach the allocution issue and find that it's error, that it's harmless because he didn't say anything that would have caused the court to alter its sentence because he just parroted his term. And if I may, the Rule 32 says that you can offer any information in mitigation. It doesn't even say evidence. He offers mitigation, classic mitigation. I do criminal defense work almost 100% of my practice, and mitigation is, well, I may be criminally liable, but let me tell you why I should get a lesser sentence. And nowhere does his lawyer indicate some facts that I found a little extraordinary that he had a girlfriend who was a police officer. They put a biometric safe in the house because he wasn't allowed to have the gun. And the FBI or the law enforcement in this case checked and that biometric safe would not open with his thumbprint. And he told the court that here. And the argument about the gun enhancement, nobody ever alleged he had a gun, he had bought the gun, or the guns were at his house or either of the two houses. And the government actually said that enhancement applies even if you don't know one of your co-conspirators even has a gun. So he's liable under the law. And so that issue was ruled upon by the judge on the enhancement. But Mr. Ashford says that's an extraordinary two-point jump because I personally don't like guns. And, Your Honors, that's mitigating. That's mitigating information. And under our law, and it's mainly the Lewis-Cole-Muhammad line of cases, it says that it could have gotten a lesser sentence, it's non-cumulative and relevant, that that's prejudicial, that's under the plenary. And so we believe that those cases would preclude the government from being able to prove homelessness. Without any other questions, I'm going to stand. Thank you, Mr. Brown. Thank you very much. And I want to say you're court-appointed. I am, Judge. And we really appreciate the work of lawyers like you. Well, thank you very much. It's my 25th year, and I really enjoy every case I get. We appreciate it very much. Thank you. Thank you. We'll come down and greet counsel, and we'll adjourn court. Signing die, Madam Clerk. This honorable court stands adjourned. Signing die. God save the United States and this honorable court.
judges: Robert B. King, G. Steven Agee, Toby J. Heytens